## LAMBERT v. STATE

No. 42386          December 10, 1962          147 So. 2d 480

*Allen & Patterson,* Brookhaven, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McElroy, J.

Appellant, Wayne Lambert, was indicted in the Circuit Court of Lawrence County, Mississippi, for desertion and non-support of his five months' old child.

On arraignment, he entered a plea of guilty, and a few days later filed a motion, supported by affidavit, for leave to withdraw the plea and make a plea of "not guilty." This motion was overruled by the court.

■■ ■ Appellant was indicted and the indictment was returned and filed on the 19th day of February 1962. The sheriff testified that he was arrested February 25th, Sunday afternoon, and defendant's affidavit shows that he was arrested about 1 A. M., Monday morning, February 26, 1962. He was arraigned on February 26th and entered a plea which appears to be "guilty." The order of the court shows that he was sentenced on the 26th day of February. The motion to withdraw the plea of guilty and enter one of "not guilty" was filed on March 2, 1962, some three days after entering the plea of "guilty." Thus the motion was timely made at the term of court.

The testimony of appellant is to the effect that he was arrested Monday morning around one o'clock and was arraigned around nine or nine thirty the same morning; that Robert Glenn Turnage, County Attorney, advised him to plead guilty to the charge; no one explained the nature and consequence of the plea of guilty; he was not afforded an opportunity to talk to any member of his family or friends between the time he was arrested and the trial; he was not afforded an opportunity to consult with counsel; he was not advised that he had a legal right to counsel; his education extending only to the sixth grade, and he did not understand the nature of a plea of "guilty." He gave as a reason for pleading guilty, as follows: "I went in the courtroom over there and Mr. Boone asked me had I been helping my wife support the baby, and I told him I had hoped some but not as much as I should have, but that was as much as I could help with no more work that I was doing." He told me "they had a charge on me at Brookhaven for accessory and I was under two years good behavior,"

and he said if ''I pled 'not guilty' and got out on bond,
they would hear about it in Brookhaven and lock'' him
up. He said he had made several efforts to see his wife
and baby but was ''run off'' by his father-in-law. He
said he had contributed approximately $15 and had
given his sister something one night to buy food and
milk at the store. He worked about one day a week
hauling pulpwood and earned $150 in the last five
months.

With reference to the conversation in the presence
of the sheriff, district attorney and Mr. Turnage, he
said: ''He didn't exactly advise me. He said it was
best for me to plead guilty. I told him I wasn't going
to plead either way because I had given her money.''
Mr. Turnage ''told me it would be best for me to plead
guilty to the charge and make it lighter on me. He didn't
say just plead guilty to it but he said that 'I would get
out lighter.' He said that if I did not plead guilty, they
would notify them in Lincoln County and they would
pick me up. I didn't know anything about it and I didn't
understand about it.'' ''The judge asked me whether
I pled guilty or not, and I first said 'I plead neither
one because I was helping the baby all I could'.'' The
following testimony on the subject was given: Q. ''How
did you plead to the judge 'Guilty' or 'Not Guilty?' '' A.
''I was pushed to plead guilty. Mr. Turnage told me
it would be best for me to plead guilty.'' Q. ''You did
finally come out and plead guilty?'' A. ''Yes, sir.''

The county attorney's testimony was to the effect
that the prosecuting witness before the grand jury was
defendant's wife. He remembered when Wayne Lam-
bert was arraigned. They had a conference in the grand
jury room. Lambert was asked about supporting the
child, and he answered that he ''had been unable to
contribute very much toward the support of the child
on account of his inability to get work; that he was a
pulpwood hauler and hadn't made much money and

hadn't given it much money"; and then he told him "it was his duty to support the child and that he would have to get employment so he could support it." He also said: "Wait a minute boy, aren't you under probation already?", and he said "Yes", and the county attorney said "Well he has already had it." He denied that he advised defendant to plead guilty.

The county attorney remembered asking Lambert if he had a lawyer, and if not, if he intended employing counsel, and he replied that he did not and was not "going to get one." Lambert reiterated that he "had not supported the child like he should have." He did not indicate that he wanted to see family, friends or a lawyer. This conversation took place in the presence of the county attorney, district attorney and sheriff: Q. "Did you at any time advise the defendant he had a legal and constitutional right to be represented by an attorney?" A. "No, sir. I sure didn't." The district attorney advised Lambert that he was charged with child desertion, and if convicted, he would be sent to the penitentiary if he entered a plea of "guilty", and he further advised him that since he was already on probation, the court could not give him probation for this offense, this being the reason for the remark "he has already had it." The county attorney stated "I don't know what it explained to him. Frankly I was talking to Vernon Broom and I didn't care to explain it to him." Q. "You also didn't care to explain any of this man's rights to him either, did you?" A. "I didn't attempt to do that * * *".

The court made this statement: *"I asked him and them the question* if anything had been worked out and they said 'No', that he was simply to be arraigned. He was then brought in front of the * * * desk and the indictment was read to him and he was asked how he desired to plead, guilty or not guilty, and *he hummed and hawed* and made some statement and I said 'Well it is

your business and you must plead one way or the other, either guilty or not guilty, as you want to,' and he said 'I want to plead guilty'. I entered the plea of guilty." (Emphasis supplied.)

██ Requirements as to legal sufficiency of a motion and affidavit have been laid down in several cases decided by this Court. An affidavit must aver that defendant "had a meritorious defense or was innocent of the charge, or that he had pleaded guilty under mistake or duress." Keys v. State, 55 So. 2d 471 (Miss.) See also Edwards v. State, 209 Miss. 325, 46 So. 2d 790.

In Daniels v. State, 163 Miss. 245, 140 So. 724, the Court stated: "We do not think the motion requires a showing that demonstrates innocence or that makes it highly probable that the defendant is innocent; but, if the defendant did not understand the nature of the plea, or the facts pertinent thereto, and it appears from the showing made that a jury might reasonably return a verdict of not guilty, the plea should be set aside, unless it is manifest that the matter took the course it did for the purpose of delaying or defeating justice."

Appellant was indicted under Sec. 2087, Miss. Code of 1942, Rec., which reads as follows:

"Any parent who shall desert or wilfully neglect or refuse to provide for the support and maintenance of his or her child or children under the age of 16 years, leaving such child or children in destitute or necessitious circumstances, shall be guilty of a felony and on conviction thereof, shall be punished by a fine of not less than twenty-five dollars, nor more than five hundred dollars, or by imprisonment in the penitentiary not exceeding two years, or both, in the discretion of the court."

This Court has been concerned for some time by the ambiguity of this statute. The meaning is not clear as to whether it charges one or all of the offenses to which it is directed. However, in the case of Lenoir v. State,

237 Miss. 620, 115 So. 2d 731, the Court said: "We think the statute denounces only one offense, the gist of which is wilful failure to provide for the support and maintenance of minor children under 16 years of age, leaving them in destitute or necessitious circumstances. * * * The means of carrying out the crime may be desertion, neglecting or refusing to provide for their support and maintenance."

In the case of Williams v. State, 207 Miss. 816, 43 So. 2d 389, it was stated: "* * * there was no proof that he (defendant) had deserted his child, but such proof as he was permitted to offer as to the facts and circumstances under which he failed to live with and support his child tended to prove that he was kept away from the child while it and its mother resided with the maternal grandmother, and that he was kept away from it by repeated personal assaults committed on him by his brother-in-law."

There is conflict in the evidence concerning what took place during the conference between appellant, district attorney, county attorney and the sheriff, particularly with reference to questions of whether or not appellant was advised to plead guilty, as to his constitutional rights, and to needing an attorney.

We believe this case is governed by the case of Pittman v. State, 198 Miss. 797, 23 So. 2d 685. Pittman, a Negro, was involved in a shooting scrape with other Negroes and as a result one person was killed and another wounded. Pittman was promptly jailed and held without preliminary hearing until the Circuit Court of Walthall County convened nine days later. The grand jury returned an indictment against him on the third day of the term, and on the following day, a deputy sheriff went to the jail and read two warrants to him, one being an indictment for manslaughter and the other for assault and battery with intent to kill and murder. Pittman was then carried to the courtroom and arraigned, and his testimony showed that he admitted he was

"guilty of the shooting." An order was entered in the manslaughter case showing that Pittman had entered a plea of guilty. He was not sentenced at that time, being remanded to the custody of the sheriff for sentencing on a later day of the term. On the following day, before sentence had been passed, an affidavit was filed on his behalf.

The opinion stated: "Appellant was introduced as a witness and his testimony supported his affidavit. There was no dispute of his testimony by any other witness upon any fact which has any substantial bearing upon the result which should be reached here. At the conclusion of the evidence, the trial judge dictated a statement into the record that when the indictments were read to the defendant and he entered the plea of guilty to each of them the judge inquired of him twice whether he knew what he was doing, to which the defendant responded that he did, and that the judge asked him if he had a lawyer and the defendant answered that he didn't want a lawyer. The judge further stated that the defendant had had a previous experience in court four or five years ago, and that from this and what happened on the present occasion the judge was satisfied that the defendant was well aware of the effect of the indictments, and that there was no reason to consider that the defendant was misled or was in the dark. It is, however, nowhere disputed or disproved either by a witness or by the judge's statement that the defendant's original response to the indictments when he was called on to plead, was that he was guilty of the shooting, and there is no showing that anything was done to ascertain what he meant thereby, which, under the Daniels case later to be cited, should have been done.

\* \* \* \* \* \*

"When all the cases and texts are examined, no better statement is found anywhere than that set forth in Deloach v. State, supra, where our Court said: 'We think

the defendant should be permitted to withdraw his plea of guilty, when unadvisedly given, where any reasonable ground is offered for going to the jury. This is a matter within the discretion of the court, but a judicial discretion, which should always be exercised in favor of innocence and liberty. All courts should so administer the law and construe the rules of practice as to secure a hearing upon the merits, if possible.  *  *  *  The law favors a trial upon the merits by a jury  *  *  *.' And the statement is in accord with recent summaries of the authorities in general, 22 C. J. S., Criminal Law, Sec. 421, p. 641, 14 Am. Jur., p. 961.

''If the offense charged involves a simple set of facts out of which any person of ordinary discretion would know, without any consultation, that he is either guilty or not guilty, then any subsequent assertion that his plea of guilty was unadvisedly given would not be looked upon with the favor which should be accorded when there is a situation of more complexity. A person charged with the larceny of a horse, well described in an indictment, the property of a named person, would know without advice whether he stole that horse or not; but when charged with manslaughter growing out of a melee, he may not know of what he is guilty, if of any crime at all, and we need no better evidence of this than the fact that the best lawyers at our bar will sincerely differ on such a question on a given state of facts, and the members of the court on appeal will differ sometimes on the subject. How, then, could an ignorant negro really know in such a case when utterly without advice or admonition from any one, layman or lawyer or judge? All that he could advisedly say was as he did say, — that he was guilty of the shooting.

*   *   *   *   *   *

''But we can say and do say that in a case involving more than a simple issue and when the response to the indictment is in such terms as ought to make the court

aware that the defendant is not responding, in the first place, without qualification, the court should clear up the matter with such a sufficient further inquiry into the factual situation, and this in open court, as will disclose to the court that, in point of fact rather than by mere subsequent words, the defendant does in real substance know what he is doing. And when this is not adequately done the mere circumstance that a plea of guilty is formally given should furnish but little obstacle to a motion to withdraw it, when the motion is made with reasonable promptitude, is in proper form as to contents, and discloses that his plea was given without the advice or admonition of any person competent to give it.''

The issue before us is similar to that in the Pittman case. ██ We have a complex charge here, like several other statutes, ██ in which it is not only the duty, but it should be the privilege, of the Court to see that defendant is adequately and properly advised as to his rights. As above-quoted, in the Pittman case the judge asked defendant if he had a lawyer, and he replied that he did not want a lawyer. We feel that it is the duty of the judge to make such investigation, even to the extent of questioning defendant as to what his wishes are, and not leave such matters to the county or district attorney. We believe that the county attorney, sheriff, district attorney and the court were really trying to aid appellant as to his probation. ██ Further, we feel that the matter of passing on the motion is within the discretion of the court, but also that judicial discretion should always be exercised in favor of innocence and liberty; and where a motion is timely made, it is the court's duty to so administer the law, and construe the law of practice, to secure a hearing upon the merits, if possible. The law always favors trial upon the merits by a jury. ██ The case is therefore reversed and remanded.

Reversed and remanded.

*McGehee, C. J., and Kyle, Ethridge and Gillespie, JJ.,* concur.

· McGehee, C. J., specially concurring:

I think that it is a wholesome rule for the Court to adopt, in view of the wording of the statute under which the appellant was indicted, that the responsibility be placed upon the trial judge to determine for himself whether or not an accused fully understands the nature and the consequences of a plea of guilty, and I therefore concur in the result reached by the Court in this case. However, I am thoroughly convinced that the district attorney had explained to the defendant, in substance, before he entered his plea of guilty that such a plea would mean that he would have to serve a sentence in the state penitentiary. The district attorney so testified at the hearing on the motion of the accused to be allowed to withdraw his plea of guilty and enter a plea of not guilty; that the circuit judge was fully warranted in believing the testimony of the district attorney, whom he knew to be an honorable man and telling the truth, when the district attorney testified that he had fully explained the result of a plea of guilty; and that the Judge was also justified in believing the county attorney when he denied having advised the appellant to plead guilty.