ROBERTSON, Justice,
for the Court:
Larry Musgrove was indicted on March 18, 1976, in the Circuit Court of the Second Judicial District of Jones County for the armed robbery of Sam Garbo, on December 16, 1975.
A day later, March 19, 1976, Honorable William M. Deavours, a very capable and experienced trial lawyer of the Laurel bar, was appointed by the court to represent Musgrove.
On March 22, 1976, Musgrove was arraigned and, in the presence of and with the consent of his attorney, pleaded “Not Guilty”.
Later on that same day, Musgrove, still represented and advised by his counsel, requested the court to allow him to change his plea from “Not Guilty” to “Guilty”. The court conducted an extended examination of Musgrove to determine whether the plea of guilty was being made freely, voluntarily, intelligently and advisedly. Mus-grove answered the court that he had talked over the change of plea with his parents and with his attorney; that he had not been promised anything, nor threatened, nor abused, nor mistreated in any way. He further answered that he fully understood the consequences of a guilty plea, that he knew that he could be sentenced to the penitentiary for life, and that he was pleading guilty freely and voluntarily-
Relying on the truthfulness of Mus-grove’s answers, the court found that the plea of guilty was freely, voluntarily, intelligently, and advisedly made, and the court thereupon allowed defendant Musgrove to change his plea from “Not Guilty” to “Guilty”. The court deferred sentencing until April 12, 1976.
On April 6,1976, Musgrove filed a Motion to Withdraw his Guilty Plea, and to again change his plea to “Not Guilty.” On April 13, 1976, the court conducted an extended hearing on Musgrove’s motion to change his plea from “Guilty” to “Not Guilty”. At this hearing, Musgrove testified that the reason he wanted to change his plea from *467 “Guilty” to “Not Guilty” was that on December 15, 1976, immediately after the crime had been committed and Garbo had been robbed of $700, that Richard McDonald, who actually committed the robbery, came up to him and threatened him in this way:
“He said, ‘You saw what happened, didn’t you?’ I said, ‘Naw, I ain’t seen nothing,’ and then Richard, then he said, ‘If you say anything about it, man, that’s you.’ In other words, he was talking about he would get me, you know. So, like I said, T ain’t seen nothing.’ And he said, ‘This here will keep you quiet,’ and he gave me $190, you know. And after that we walked on up on the corner by the store.
“Q You did or he did?
“A I did. He went up that way, too, you know, right behind me and he threw the wallet up on top of a house in the projects.”
Under cross-examination, Musgrove further testified:
“Q Did you say on December 30th, 1975 at 5:13 p. m. in the Investigative Division of the Laurel Police Department to Capt. Segrest after having been warned of your rights, ‘Me and Robert Earl Andrews were together all day on December 15th, 1975.’ Is that true?
“A Yes, sir.
“Q ‘We were planning to do something to get some money if we had to break into a place.’ Is that true?
“A Yes, sir.
“Q You all were planning to break into a place, if you had to, to get some money.
“A Yes, sir.”
Under further cross-examination Mus-grove testified that he did not tell his parents about this so-called threat, did not tell the investigating officers about the threat, and that he didn’t even mention it to his attorney until March 29, 1976.
At this hearing on his motion to again change his plea, this time from “Guilty” to “Not Guilty”, Musgrove stated that he lied to the court when the court questioned him extensively on his guilty plea, lied to the investigating officers, lied to his parents, and lied to his attorney, but now on April 13, 1976, he was telling the truth.
The court, in its order of April 14, 1976, found:
“The Court, after carefully considering the evidence adduced on behalf of defendant’s motion, as well as hearing the record made at the time the defendant entered his plea of guilty, is of the opinion that such plea was not only made intelligently, freely and voluntarily at a time when defendant fully appreciated the consequences thereof, but, moreover, such plea was advisedly made at a time when he was capably assisted by counsel whose ability has not been assailed.

“The Court acknowledges that the resolution of defendant’s motion involves judicial discretion which should always be exercised in favor of innocence and liberty and in favor of securing a hearing on the merits, but the very case which so clearly enunciates this rule, Lambert v. State, 245 Miss. 227, 147 So.2d 480, is prefaced by the proposition that is equally clear that defendant should be permitted to withdraw his plea of guilty when unadvisedly given. Such is not the case here.
“In conclusion, The Court is convinced that defendant testified truthfully during the evidentiary hearing at the time when the guilty plea was accepted. There is no testimony to the effect that any accomplice involved in the near fatal bludgeoning of the victim threatened harm or injury to the defendant if he did not plead guilty. He made the decision to do so, aided by competent counsel, freely, voluntarily and intelligently, fully appreciating the consequences of so doing.”
The Supreme Court of the United States in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), enunciated these tests that must be applied before accepting a guilty plea:
*468 “That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant’s admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so — hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant’s consent that judgment of conviction may be entered without a trial — a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.” 397 U.S. at 748, 90 S.Ct. at 1468-69, 25 L.Ed.2d at 756.
It is the opinion of this Court that all of these tests were made and met, that the guilty plea of Musgrove was freely, voluntarily, intelligently and advisedly made, that Musgrove understood fully and completely the consequences of making a guilty plea, and that the court was correct in denying Musgrove the right to change his plea a second time.
The judgment of the lower court, accepting Musgrove’s guilty plea and sentencing him to twenty-five years in the state penitentiary for armed robbery, is affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.